UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRYANT HENRY,

                              Plaintiff,

              -against-

COUNTY OF NASSAU, et al.,

                              Defendants.
------------------------------------------------------------X
FEUERSTEIN, District Judge

**FILED**
**CLERK**

5/13/2015 11:10 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**ORDER**
13-cv-7427(SJF)(ARL)

        On or about December 18, 2013, incarcerated *pro se* plaintiff Bryant Henry ("plaintiff")

filed, *inter alia*, a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 against

defendant County of Nassau ("the County") and multiple "John Doe" defendants, subsequently

identified as Michael J. Sposato ("Sheriff Sposato"), Sheriff for the Nassau County Correctional

Center ("NCCC"); Corporal Gulliksen ("Cpl. Gulliksen"), corporal for Dorm E2C of the NCCC

on December 27, 2010; Correction Officer Collins ("C.O. Collins"), Shield No. 2265, correction

officer for Dorm E2C of the NCCC on December 27, 2010; Corporal Marciano ("Cpl.

Marciano"), corporal for the Satellite Building Dorm EIF of the NCCC on October 2, 2011;

Correction Officer Grier ("C.O. Grier"), Shield No. 2226; Correction Officer McGuinness ("C.O.

McGuinness"), Shield No. 121; Sergeant Drake ("Sgt. Drake"), Shield No. 100; Correction

Officer Teves ("C.O. Teves"), Shield No. 2460; Correction Officer Ley ("C.O. Ley"), Shield No.

2421; Captain Dennis Hesse ("Cpt. Hesse"), s/h/a the Deputy Sheriff of Security for the NCCC;

Correction Officer Shearin ("C.O. Shearin"), Shield No. 2997, correction officer for the Satellite

Building Dorm EIF of the NCCC; James Ford ("Commissioner Ford"), Commissioner of the

NCCC; Correction Officer Peletier ("C.O. Peletier"), Shield No. 2513; Sergeant Krueger ("Sgt. Krueger"); Sergeant Tobin ("Sgt. Tobin"); Correction Officer Terry-Clarke ("C.O. Terry-Clarke"); and Correction Officer Camidge ("C.O. Camidge"), Shield No. 2394, all in their individual and official capacities.[1]

The County, supervisory defendants and individual defendants (collectively, "defendants") now move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.  For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

I.       BACKGROUND

         A.       Factual Allegations[2]

         Plaintiff alleges, *inter alia*, that on December 27, 2010, defendants, subsequently identified as Sgt. Krueger, Sgt. Tobin and C.O. Terry-Clarke, (DE 20), ignored his request for protective custody, and the news reports and "general population gang members [sic] knowledge of [his] alleged [k]illing of one of their High Ranking Members," and "deliberately placed [him]

---

[1]  Although plaintiff designated only thirteen (13) "John Doe" defendants, the County identified the following individuals who may also have been involved in the incidents alleged in the complaint, all of whom were added as additional defendants: (a) C.O. Terry-Clarke, Sgt. Kruegar and Sgt. Tobin, as the individuals who assigned plaintiff to his housing location upon his entry to the NCCC, (DE 20); and (b) C.O. Camidge as an additional correction officer assigned to the Nassau County Supreme Court Holding Pens on February 9, 2011, (DE 22).  Sheriff Sposato, Commissioner Ford and Cpt. Hesse will collectively be referred to herein as "the supervisory defendants."  The remaining defendants, including the additional defendants, with the exception of the County, will be collectively referred to herein as "the individual defendants."

[2]  The following facts are taken from the complaint and considered to be true for purposes of this motion only.  They do not constitute findings of fact by the Court.

inside the general population Dorm E2C Satellite Building of the [NCCC][.]" (Complaint ["Compl."], ¶ 13).  At approximately 8:30 or 9:00 p.m. that same date, plaintiff was "maliciously and badly [j]umped, kicked, stomped and punched in his eyes, gaws [sic], chest, legs and back for at least 2-minutes while John Doe #2 [Cpl. Gulliksen] and #3 [C.O. Collins] looked on * * * , [knowing] through news reports, rumors and [himself] that []there was a hit [threat] on his life." (Id. (last brackets in original)).  Following that attack, plaintiff "was moved to Protected [sic] Custody, after investigating Officer [not a defendant] recommended that, '[he] not be placed inside the general population, due to threats of a hit on his life for the killing of a High Ranking Gang Member.'" (Compl., ¶ 16 (second brackets in original)).

Plaintiff further alleges, *inter alia*, that on or about February 9, 2011, defendants took him out of protective custody, despite knowing that he was a "target by gang members in the general population," (Compl., ¶ 14), and took him to the Nassau County Supreme Court to be arraigned on murder and weapon charges, where he "was intentionally and with a deliberately [sic] disregard for his Safety, placed in a holding cell with two known Escape Risk and gang members, who were not handcuffed or shackled like [him][,] and beat[en] so bad [sic] that [he] ha[d] injuries to his back, eyes, ribs and head[.]" (Id. (quotations omitted); see also id., ¶ 17). According to plaintiff, "defendants John Doe # 4, 5, 6, 7, 8 and 9," subsequently identified as C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley, C.O. Peletier and C.O. Camidge, "each stood by and watched, and threaten [sic] [him] with further assaults and beatings and even death, if he reported or filed any complaints, and told [him] that, 'You are a dead man[.]'" (Id. (emphasis and quotations omitted)).

Plaintiff also alleges, *inter alia*, that on October 2, 2011, while he was watching

television in "the Satellite Building, in Dorm EIF, [he] was jumped by four additional gang members, who choked, punched and repeatedly stomped [him] in his back and side for at least a minute and a half, despite defendants John Doe #10 [C.O. Marciano] and #11 [C.O. Shearin] standing 10 feet away, and placed on keeplock for 5-days and threaten [sic] with further physical harm, if he report [sic] the incident to anybody[.]" (Compl., ¶ 15).


B.    Procedural History

On December 18, 2013, plaintiff filed, *inter alia*, a civil rights complaint in this Court pursuant to Section 1983 against defendants alleging that on three (3) separate occasions, defendants failed to intervene or otherwise protect him from assault by other inmates at the NCCC in violation of his rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.  (Compl., ¶ 24).  Plaintiff seeks, *inter alia*, to recover compensatory and punitive damages.  (Compl. at 9).

Defendants now move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.


II.    DISCUSSION

A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d

5

55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013) (accord). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014), cert. denied, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).


B.     Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

>    "[e]very person who, under color of any statute, ordinance,
>    regulation, custom, or usage, of any State . . . subjects, or causes to
>    be subjected, any citizen of the United States . . . to the deprivation
>    of any rights, privileges, or immunities secured by the Constitution
>    and laws, shall be liable to the party injured."

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege  (1) that the

6

challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

1.      Statute of Limitations

Defendants contend that plaintiff's allegations regarding the first assault on December 27, 2010 are time barred because, according to them, the complaint was not filed until December 30, 2013.

"Section 1983 actions filed in New York are * * * subject to a three-year statute of limitations." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013); see also Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).  "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)).

Defendants' contention is without merit.  Under the prison mailbox rule, a document is deemed filed by a *pro se* prisoner when he delivers it "to prison authorities for forwarding to the District Court." Houston v. Lack, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); see also Arzuaga v. Quiros, 781 F.3d 29, 33 (2d Cir. 2015) (finding that under the prison mailbox rule, the *pro se* prisoner's documents are considered filed on the date he delivered them to prison authorities for delivery).  In his affirmation of service, plaintiff indicates that he mailed, *inter alia*, the complaint to this Court from his place of incarceration on December 18, 2013.

7

Accordingly, plaintiff's complaint is deemed filed on that date, i.e., December 18, 2013, which is within the three (3)-year limitations period for all of plaintiff's Section 1983 claims.  Thus, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims based upon the December 27, 2010 assault is denied.

        2.        Constitutional Deprivation

Defendants contend, *inter alia*, that the complaint fails to state a plausible Section 1983 deliberate indifference claim for failure to protect.

Prison officials have a duty, imposed under either the Eighth Amendment with respect to convicted prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with respect to pretrial detainees in federal custody and state custody, respectively,[3] to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates[.]"  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted).  Specifically, "prison officials have a duty [] to protect prisoners from violence at the hands of other prisoners." Id. at 833, 114 S. Ct. 1970 (quotations and citation omitted).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834, 114 S. Ct. 1970.  Rather, a plaintiff can only establish a constitutional

---

[3]  The same "deliberate indifference" standard applies to claims challenging prison conditions regardless of whether the claim is brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments.  See Caiozzo v. Koreman, 581 F.3d 63, 70-1 (2d Cir. 2009).

deprivation by showing (1) that the alleged deprivation was "objectively, sufficiently serious," id. (quotations and citation omitted); and (2) that the prison official acted, or failed to act, with "a sufficiently culpable state of mind[,]" id. (quotations and citation omitted), which, "[i]n prison-conditions cases * * * is one of deliberate indifference to inmate health or safety." Id. (quotations and citation omitted).

### a.    Failure to Protect

The objective element of a failure to protect claim requires the inmate to show "that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. 1970. "In determining whether a substantial risk of harm existed, the Court should not assess a prison official's actions based on hindsight but rather should look at the facts and circumstances of which the official was aware at the time he acted or failed to act." Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (quotations and citations omitted); see also Walker v. Shaw, No. 08 Civ. 10043, 2010 WL 2541711, at * 9 (S.D.N.Y. June 23, 2010). Whether plaintiff's allegedly known status as a gang member and killer of a high-ranking gang member created a substantial risk of serious harm to him at the NCCC is a triable issue of fact under the circumstances of this case.

The subjective element of deliberate indifference is akin to "subjective recklessness as used in the criminal law," Farmer, 511 U.S. at 839-40, 114 S. Ct. 1970, and requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Id. at

837, 114 S. Ct. 1970.  "[D]eliberate indifference entails something more than mere negligence, *
* * [but] something less than acts or omissions for the very purpose of causing harm or with
knowledge that harm will result." Id. at 835, 114 S. Ct. 1970.  A plaintiff "need not show that a
prison official acted or failed to act believing that harm actually would befall an inmate; it is
enough that the official acted or failed to act despite his knowledge of a substantial risk of serious
harm." Id. at 842, 114 S. Ct. 1970.

Generally, "[w]hether a prison official had the requisite knowledge of a substantial risk is
a question of fact subject to demonstration in the usual ways, including inference from
circumstantial evidence, * * * and a factfinder may conclude that a prison official knew of a
substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct.
1970.  "For example, if a[] * * * plaintiff presents evidence showing that a substantial risk of
inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison
officials in the past, and the circumstances suggest that the defendant-official being sued had
been exposed to information concerning the risk and thus must have known about it, then such
evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual
knowledge of the risk." Id. at 842-43, 114 S. Ct. 1970 (quotations and citation omitted).

However, "prison officials who actually knew of a substantial risk to inmate health or
safety may be found free from liability if they responded reasonably to the risk, even if the harm
ultimately was not averted." Farmer, 511 U.S. at 844, 114 S. Ct. 1970.  Thus, a prison official
may be liable for deliberate indifference "only if he knows that inmates face a substantial risk of
serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at
847, 114 S. Ct. 1970.

A plaintiff may state a claim for deliberate indifference based upon a failure to protect by alleging, *inter alia*, (1) "that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff[,]" Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013); or (2) "that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." Id.; see also Lojan v. Crumbsie, No. 12-cv-320, 2014 WL 6643070, at * 4 (S.D.N.Y. Oct. 6, 2014).  Plaintiff's allegations, *inter alia*, that defendants knew of a history of inmate-on-inmate attacks at the NCCC; that plaintiff was affiliated with a gang and charged with the murder of a high-ranking gang member; and that plaintiff had requested to be placed in protective custody upon entering the NCCC as a result of his gang association and criminal charges, but nonetheless housed him in the general population, and then removed him from protective custody and failed to segregate him from other prisoners while he was being held at the courthouse for his arraignment after he had been attacked approximately six (6) weeks earlier, are sufficient at the pleadings stage to state plausible Section 1983 deliberate indifference claims against those defendants alleged to have been personally involved in such conduct. Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's Section 1983 failure to protect claims against Sgt. Krueger, Sgt. Tobin and C.O. Terry-Clarke, i.e., the individuals who assigned plaintiff to his housing location upon his entry to the NCCC  on December 27, 2010; C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley, C.O. Peletier and C.O. Camidge, i.e., the individuals who may have placed plaintiff in the holding cell with other inmates who attacked him at the Nassau County Supreme Court on February 9, 2011; and the

supervisory defendants, who, *inter alia*, allegedly ignored the grievances and complaints made by plaintiff and his family members regarding the individual defendants' failure to protect him at the NCCC, is denied.[4]

However, since, *inter alia*, almost eight (8) months elapsed between the second and third attacks without incident, and plaintiff does not allege that defendants, and particularly Cpl. Marciano and C.O. Shearin, knew of any threats or complaints of attacks upon plaintiff occurring within those intervening months, it cannot reasonably be inferred that those defendants knew that he continued to face a substantial risk of serious harm from other inmates at the NCCC, or that the measures previously taken to abate the risk to plaintiff, which seemingly worked for almost eight (8) months, were no longer in place, effective or reasonable to protect plaintiff from an attack by other inmates.  See, e.g. Brown v. Wood, 86 F. App'x 463, 464 (2d Cir. Feb. 3, 2004) (summary order) (affirming dismissal of Section 1983 failure to protect claim on basis that defendants did not act with deliberate indifference in releasing the plaintiff from protective custody into the general population eighteen [18] months after receiving an anonymous note that the plaintiff was going to be stabbed by a fellow inmate).  Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's Section 1983 claims based upon the third assault on

---

[4]  Since plaintiff does not allege that Cpl. Gulliksen or C.O. Collins were personally involved in the decision to place him into the general population upon his entry to the NCCC on December 27, 2010, or any of the challenged conduct occurring after that date, the complaint fails to state a plausible Section 1983 failure to protect claim against those defendants.  See Raspardo v. Carlone, 770 F.3d 97, 115, 116 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant. * * * § 1983 requires individual, personalized liability on the part of each government defendant."); Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations and citation omitted)).

October 2, 2011 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted, and plaintiff's Section 1983 claim against defendants based upon the third assault on October 2, 2011 is dismissed in its entirety for failure to state a claim for relief.

b.      Failure to Intervene

Plaintiff's complaint can also be read to state a Section 1983 claim for failure to intervene against Cpl. Gulliksen and C.O. Collins with respect to the first assault; C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley , C.O. Peletier and C.O. Camidge with respect to the second assault; and Cpl. Marciano and C.O. Shearin with respect to the third assault.

"In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene."  Rosen v. City of New York, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (quotations, brackets and citation omitted).  In order to establish a failure to intervene claim, the plaintiff must show: "(1) that [the prison official] observed or had reason to know that the [p]laintiff was involved in a physical altercation with another inmate; (2) that [the prison official] had a reasonable opportunity to intervene to prevent the attack from continuing * * * [i.e.,] the attack must have been of sufficient duration that an officer present as the scene would have had a reasonable opportunity to attempt to prevent the attack from continuing[] * * *; (3) that in failing to intervene [the prison official was] deliberately indifferent to a substantial risk of harm to [the] [p]laintiff; and (4) that [the prison official's] deliberate indifference to a substantial risk of harm was a risk that caused [the] [p]laintiff some harm."  Id. (citation omitted).  "However, in circumstances where a corrections

13

officer reasonably concludes that further intervention would threaten the health and safety of all concerned, including correctional staff, his failure to intervene is not a constitutional violation." Id.

Although "[u]nder certain circumstances, the commencement of an inmate-to-inmate altercation could put a prison official on sufficient notice to render [him or her] deliberately indifferent if he or she then fails to intervene in an appropriate manner," Stewart v. Schiro, No. 13-cv-3613, 2015 WL 1854198, at * 2 (E.D.N.Y. Apr. 22, 2015), where, *inter alia*, the fight was not of sufficient duration that an officer present as the scene would have had a reasonable opportunity to attempt to prevent the attack from continuing, the plaintiff cannot establish a Section 1983 failure to intervene claim.  See, e.g. id. (dismissing the plaintiff's Section 1983 failure to intervene claim where, *inter alia*, the fight between the two inmates lasted only one (1) to two (2) minutes). Since plaintiff alleges that the first attack lasted approximately two (2) minutes, (Compl., ¶ 13), and the third attack lasted approximately a minute and a half, (Compl., ¶ 15), he cannot state a plausible Section 1983 failure to intervene claim against Cpl. Gulliksen, C.O. Collins, Cpl. Marciano and C.O. Shearin as a matter of law.  Accordingly, any Section 1983 failure to intervene claim against Cpl. Gulliksen, C.O. Collins, C.O. Marciano and C.O. Shearin in the complaint is dismissed with prejudice for failure to state a claim for relief.

However, with respect to the second attack, the complaint contains sufficient factual allegations from which it may reasonably be inferred, *inter alia*, (1) that C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley, C.O. Peletier and C.O. Camidge observed the attack; (2) failed to intervene in the attack; and (3) acted with deliberate indifference of a substantial risk of harm to plaintiff in light of the comments they allegedly made during the

14

attack.  As there is no indication in the complaint as to the duration of the second attack, it cannot

be determined at the pleadings stage whether the second attack was of sufficient duration so as to

afford those defendants a reasonable opportunity to intervene to protect plaintiff from further

harm.  Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section

1983 claim failure to intervene claim against C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O.

Teves, C.O. Ley, C.O. Peletier and C.O. Camidge is denied.


### 3.   Section 1983 Claims against the County

Defendants contend, *inter alia*, (1) that plaintiff "has failed to allege the existence of any

municipal policy, practice or custom which is condoned and carried out by County defendant,

which has resulted in a deprivation of his rights[,]" (Defendants' Memorandum of Law ["Def.

Mem."], at 22); and (2) that plaintiff's allegation that "County defendants engaged in a pervasive

practice known as 'the Program' as a way to control or discipline inmates * * * is ludicrous,

speculative, in no way endorsed by the [NCCC], Sheriff's department or correctional officers

and, most importantly, unsupported by anything more than mere conclusory statements in

Plaintiff's Complaint."  (Id.)

"[A] municipality can be held liable under Section 1983 if the deprivation of the

plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

municipality."  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), cert. denied, 134 S.

Ct. 125, 187 L. Ed. 2d 255 (2013); accord Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 62

(2d Cir. 2014).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on

a *respondeat superior* basis for the tort of its employee."  Jones, 691 F.3d at 80; see also Connick

v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under

Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los

Angeles Cnty., Calif. v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010)

("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it

employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Dep't

of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions

taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

damages; and (5) that an official policy of the municipality caused the constitutional injury."

Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, — U.S. —, 131 S.

Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983

must prove that 'action pursuant to official municipal policy' caused their injury." (quoting

Monell, 436 U.S. at 691,98 S. Ct. 2018)); Humphries, 562 U.S. 29, 131 S. Ct. at 452 ("[A]

municipality may be held liable when execution of a government's *policy or custom* . . . inflicts

the injury." (emphasis in original) (quotations and citation omitted)).  "A municipal policy may

be pronounced or tacit and reflected in either action or inaction."  Cash v. County of Erie, 654

F.3d 324, 333 (2d Cir. 2011).  "Official municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and

widespread as to practically have the force of law."  Connick, — U.S. —, 131 S.Ct. at 1359.

    In addition, municipal liability can be established "by showing that a policymaking

official ordered or ratified the employee's actions - either expressly or tacitly."  Jones, 691 F.3d

at 81.  "Thus, a plaintiff can prevail against a municipality by showing that the policymaking

official was aware of the employee's unconstitutional actions and consciously chose to ignore them."  Id.  To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."  Id.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Id. (quotations and citation omitted).  "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent."  Id.; see also Cash, 654 F.3d at 334.

        To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists.  See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference[.]" (quotations, brackets, ellipsis and citation omitted)).  "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); see also Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (accord).

        Contrary to defendants' contention, plaintiff alleges more than that the County "engaged in a pervasive practice known as 'the Program' as a way to control or discipline inmates."  (Def. Mem. at 22).  Plaintiff alleges, inter alia, that from December 27, 2010 through October 2, 2011, the County and supervisory defendants, who he alleges are policymaking officials of the NCCC: (1) placed him in the general population of the NCCC, despite "knowing that [he] was the target of a gang operating there, as reported on the news[,]" (Compl., ¶ 16; see also id., ¶ 6); (2) "knew

of the substantial risk of serious harm to [his] safety, but ignored that known danger and did nothing to protect [him]" from the second and third attacks, (id., ¶¶ 17-18); (3) "ignored and failed to remedy" the grievances and appeals he filed, and the telephone calls made by his family members to them, regarding the individual defendants' failure to protect him, (id., ¶ 19); (4) "have been aware of the routine, dangerous and unconstitutional sanctioning of violence against inmates at [the NCCC]," (id., ¶ 20), for years, "through County reports, civil litigation, complaints from [NCCC] detainees and advocacy [o]rganizations, [and] news articles[,]" (id.); and (5) have "ignored and condoned [sic] [the individual defendants'] endorement [sic] of '[a] Program at the [NCCC],' as a way to control and/or discipline those held in custody, and ignored Grievances, Complaint [sic] and Appeals, as a Countywide policy to prevent Access to the Federal and State Courts, by not filing, logging or remedying Medical and Staff Misconduct Grievances, as a way of continuing 'the Program,'" (id., ¶ 8; see also id., ¶ 22).  Those allegations are sufficient, at the pleadings stage, to state a plausible Section 1983 claim against the County.  Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against the County pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.


4.      Punitive Damages

Defendants are correct that "[a] municipality is immune from punitive damages under 42 U.S.C. § 1983."  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).  Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claim for punitive damages against the County pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 claim for punitive damages against the County is dismissed in its entirety with prejudice for failure to state a claim for relief.

Nonetheless, a municipality's immunity from punitive damages "does not extend to a municipal official sued in his individual capacity." New Windsor Volunteer Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006). Accordingly, and since defendants have not sought dismissal of plaintiff's Section 1983 claim seeking punitive damages against the supervisory defendants, Sgt. Krueger, Sgt. Tobin, C.O. Terry-Clarke, C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley, C.O. Peletier and C.O. Camidge in their individual capacity for failure to state a claim for relief, plaintiff's Section 1983 claim seeking punitive damages against those defendants in their individual capacity shall proceed in this case.

### 5.    Qualified Immunity

Defendants contend that plaintiff's claims against the supervisory defendants and individual defendants should be dismissed on the grounds of qualified immunity because "plaintiff fails to allege the bare minimum to establish an objectively serious deprivation." (Def. Mem. at 24).

"Qualified immunity protects federal and state officials from both civil damages and 'unnecessary and burdensome discovery or trial proceedings[,]'" Spavone, 719 F.3d at 134 (quoting Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)); accord Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012), "where the officials' conduct was not in violation of a 'clearly established' constitutional right." Sudler v. City of New York, 689

F.3d 159, 174 (2d Cir. 2012), cert. denied, 133 S. Ct. 2777, 186 L. Ed. 2d 219 (2013); see also

Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) ("A federal official is entitled to qualified

immunity from suit for money damages unless the plaintiff shows that the official violated a

statutory or constitutional right, and that the right was 'clearly established' at the time of the

challenged conduct.") "It is an affirmative defense that the defendants have the burden of raising

in their answer and establishing at trial or on a motion for summary judgment." Spavone, 719

F.3d at 134 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("Qualified

immunity is an affirmative defense, on which the defendant officials bear the burden of proof.")

      "Qualified immunity * * * extends to circumstances where an official's conduct 'does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known,' and applies 'regardless of whether the government official's error is a mistake of

law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Spavone, 719

F.3d at 135 (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565

(2009)); see also Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013), cert. denied, 135 S. Ct.

948, 190 L. Ed. 2d 830 (2015) ("Qualified immunity, an affirmative defense on which the

defendant officials bear the burden of proof, * * * protects public officials performing

discretionary functions from personal liability in a civil suit for damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known."); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 793 (2d Cir. 2002)

("Individual public officials are entitled to qualified immunity from claims for monetary damages

if the statutory right infringed was not clearly established at the time of the violation or if it was

objectively reasonable for officials to believe their acts did not infringe upon those rights.")

"So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity."  Spavone, 719 F.3d at 135 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("If the conduct did not violate a clearly established right, or if it was objectively reasonable for the official to believe that his conduct did not violate such a right, then the official is protected by qualified immunity." (quotations, brackets and citation omitted)). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" McGarry v. Pallito, 687 F.3d 505, 512 (2d Cir. 2012) (quotations and citation omitted); see also Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010), in light of the "particular factual context" he confronted.  Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013).  "In short, if at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity."  Id. (brackets in original) (quotations and citation omitted).

"[Q]ualified immunity provides a broad shield[] * * * to ensure 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" Zalaski, 723 F.3d at 389 (quoting Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1665, 182 L. Ed. 2d 662 (2012)).  "Toward that end, it affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." Id. (quoting Messerschmidt v. Millender, — U.S. —, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012)).  "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'"  Vincent, 718 F.3d at 166 (emphasis omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); see also Sudler, 689 F.3d at 174 ("Qualified

immunity * * * shields government officials from liability when they make reasonable mistakes about the legality of their actions * * *." (quotations and citation omitted)).

"Because the immunity not only protects against a judgment for damages but also is in part an entitlement not to be forced to litigate, * * * early resolution of the qualified immunity defense is encouraged * * *." Vincent, 718 F.3d at 166-67 (quotations and citations omitted); see also Walker, 717 F.3d at 126 ("[C]ourts should resolve the question of qualified immunity at the 'earliest possible stage in litigation[.]" (quotations and citation omitted)).  However, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route[.]" Walker, 717 F.3d at 126 (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).  "[O]n a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.'" McGarry, 687 F.3d at 514 (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).  Accordingly, "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." Walker, 717 F.3d at 130.

"Where the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6) * * *." Vincent, 718 F.3d at 167; see also Bush v. City of Utica, N.Y., 558 F. App'x 131, 133 (2d Cir. Mar. 17, 2014) (summary order) (accord).  However, "a ruling on the availability of a qualified immunity defense would be premature [on a motion to dismiss] [if,] [f]or example, the objective reasonableness of the defendants' acts depends in part on what information they had at the time." Taylor, 313 F.3d at

22

793-94.

Since, liberally read, plaintiff's complaint plausibly alleges violations of his rights under the Eighth and/or Fourteenth Amendments by the supervisory defendants, Sgt. Krueger, Sgt. Tobin, C.O. Terry-Clarke, C.O. Grier, Sgt. McGuinness, Sgt. Drake, C.O. Teves, C.O. Ley, C.O. Peletier and C.O. Camidge in their individual capacity, and that those defendants acted with at least deliberate indifference with respect to those rights, as set forth above, the issue with respect to qualified immunity in this case is whether those defendants reasonably believed that their conduct did not violate those rights.  Where, as here, "[i]t is unclear what information the individual defendants possessed when they allegedly deprived plaintiff[] of [his] rights under the [Constitution], or whether other facts may come to light that would render their actions objectively reasonable[,]" Taylor, 313 F.3d at 794, a qualified immunity defense is properly denied at the pleadings stage.  See id.; Starkey ex rel. Starkey v. Somers Cent. Sch. Dist., 319 F. Supp. 2d 410, 421 (S.D.N.Y. 2004) ("[T]he qualified immunity issue turns on factual questions that cannot be resolved at the motion to dismiss stage of proceedings."  (quotations, brackets and citation omitted)).   Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against the individual defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as barred by the doctrine of qualified immunity is denied.


C.      Leave to Amend

Although plaintiff, in his opposition to the motion, seeks leave to amend his complaint, since, *inter alia*, the individuals identified by the County as potentially being the "John Doe" defendants designated in the original complaint were already substituted and/or added as

defendants in this action pursuant to my order dated January 28, 2014, (see Orders dated
5/22/2014, 6/5/2014 and 6/30/2014), and the proposed amended complaint does not cure the
pleading deficiencies in the claims dismissed herein for failure to state a claim for relief,
plaintiff's application is denied.  See  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d
Cir. 2014) ("A plaintiff need not be given leave to amend if [he] fails to specify * * * how
amendment would cure the pleading deficiencies in [his] complaint."); accord Lucio v. New
York City Dep't of Educ., 575 F. App'x 3, 6 (2d Cir. Aug. 5, 2014) (summary order).


III.    CONCLUSION

        For the reasons set forth above, defendants' motion to dismiss plaintiff's Section 1983
claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted
to the extent that plaintiff's Section 1983 claims against Cpl. Gulliksen, C.O. Collins, Cpl.
Marciano and C.O. Shearin are dismissed in their entirety with prejudice for failure to state a
claim for relief, and plaintiff's Section 1983 claim seeking punitive damages against the County
is dismissed in its entirety with prejudice for failure to state a claim for relief, and the motion is
otherwise denied.  Since plaintiff's Section 1983 claims against Cpl. Gulliksen, C.O. Collins,
Cpl. Marciano and C.O. Shearin are dismissed in their entirety with prejudice for failure to state a
cause of action, and there is no just reason for delay, the Clerk of the Court shall enter judgment
in favor of those defendants pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and
dismiss them from this case.  Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure,
the Clerk of the Court shall serve notice of entry of this Order upon all parties as provided in
Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

24

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

/s/
_____
Sandra J. Feuerstein
United States District Judge

Dated: May 13, 2015
        Central Islip, New York

25